IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ELIJAH R. MCCUTCHEON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CARMELA MCCUTCHEON, <br><br> Plaintiff, <br><br> vs. <br><br> THI OF S.C. AT CHARLESTON, LLC, d/b/a DRIFTWOOD REHABILITATION AND NURSING CENTER, n/k/a RIVERSIDE HEALTH AND REHAB, <br><br> Defendant. | No. 2:11-CV-02861 <br><br> **ORDER** |

      This matter is before the court on a motion to dismiss and to compel arbitration brought by defendant THI of South Carolina at Charleston, LLC, d/b/a Driftwood Rehabilitation and Nursing Center, n/k/a Riverside Health and Rehab ("Driftwood"). For the reasons set forth below, the court grants defendant's motion.

## I.  BACKGROUND

      Elijah R. McCutcheon, individually and as personal representative of the estate of Carmela B. McCutcheon, originally filed suit on September 15, 2011, in the South Carolina Court of Common Pleas for the Ninth Judicial District. Driftwood filed a notice of removal in federal court on October 20, 2011, asserting diversity jurisdiction under 28 U.S.C. § 1332. Driftwood then answered the complaint on October 24, 2011. On November 1, 2011, Driftwood filed a motion to dismiss and to compel arbitration. On November 30, 2011, McCutcheon filed a response in opposition. Driftwood filed a reply on December 6, 2011.

1

Plaintiff brings this action against Driftwood for: negligence; negligence per se; breach of contract; fraud and misrepresentation; violation of the South Carolina Unfair Trade Practices Act; negligence – wrongful death; and negligence – survivorship. The dispute arises from Carmela McCutcheon's care while residing at the Driftwood Rehabilitation and Nursing Center in Charleston.

Upon her admittance into the facility, Carmela McCutcheon and Driftwood entered into an Admissions Agreement and an Arbitration Agreement. Def.'s Mot. 2. These documents were signed by Elijah McCutcheon, Carmela McCutcheon's husband, as Carmela's "'Durable Power of Attorney for Health Care' / 'Legal Guardian' / 'Responsible Party.'" See id. Ex. A. The Arbitration Agreement provided in part,

> **[I]n the event of any controversy or dispute between the parties** arising out of or relating to Health Care Center's Admission Agreement, or breach thereof, or relating in any way to Resident's stay at Health Care Center, or to the provisions of care or services to Resident, included but not limited to any alleged tort, personal injury, negligence or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right or rights granted under State law (collectively "Disputes"), and the parties are unable to resolve such through negotiation, then **the parties agree that such Dispute(s) shall be resolved by arbitration**, as provided by the South Carolina Alternate Dispute Resolution/Media Rules.
> . . .
> **The parties acknowledge and agree that, because the services and reimbursement thereof effects a transaction that involves interstate commerce, the enforcement of this Arbitration Agreement is not subject to the South Carolina Uniform Arbitration Act and shall be governed by the Federal Arbitration Act** (Title 9 of the United States Code), notwithstanding any contrary provision of this Agreement or contrary state law.
> . . .
> **By his/her signature below, the executing party represents that he/she has the authority to sign on the Resident's behalf so as to bind the Resident as well as the Representative**.

Id. (emphasis added).

2

## II.   DISCUSSION

Driftwood moves to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), which provides in part that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 23-24 (1983).  Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

>A court shall compel arbitration pursuant to the FAA if a party demonstrates:
>
>(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation marks omitted).  Plaintiff only contests the second and third elements of the four-part test, arguing that the dispute is not arbitrable because there is no valid and enforceable arbitration agreement, and that the FAA does not apply because the transaction does not "in fact" involve interstate or foreign commerce.  While federal law governs the arbitrability of disputes, state law governs issues regarding contract formation.  Hill v. PeopleSoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005).  Because this

3

case involves the question of whether the Arbitration Agreement was a valid contract, the court looks to South Carolina law, as the agreement was entered into in South Carolina and contemplated services to be rendered in South Carolina.

### A.  Existence of Enforceable Arbitration Agreement

Driftwood argues plaintiff should be equitably estopped from denying the validity of the Arbitration Agreement, and that Carmela McCutcheon is bound to the agreement as a third party beneficiary.  Plaintiff responds that the arbitration agreement is not enforceable.

#### 1.  Equitable Estoppel

First, Driftwood argues plaintiff should be equitably estopped from denying that Elijah McCutcheon had authority to bind Carmela McCutcheon.  "[T]he doctrine of estoppel is equitable in nature."  Ahrens v. State, 709 S.E.2d 54, 58 (S.C. 2011). "Equitable estoppel occurs where a party is denied the right to plead or prove an otherwise important fact because of something which he has done or failed to do." Parker v. Parker, 443 S.E.2d 388, 391 (S.C. 1994).  "[N]o party suing on a contract should be able to enforce certain contract provisions while simultaneously attempting to avoid the terms of an arbitration provision therein."  United States v. Bankers Ins. Co., 245 F.3d 315, 323 (4th Cir. 2001); see Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000) (internal quotation marks omitted) ("To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.").

Here, the Arbitration Agreement and Admissions Agreement, while separate documents, were executed by the same parties, at the same time, and regarding the same transaction; therefore, they constitute the entire agreement between the parties. See Klutts Resort Realty, Inc. v. Down'Round Dev. Corp., 232 S.E.2d 20, 24 (S.C. 1977) ("The general rule is that, in the absence of anything indicating a contrary intention, where instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, the courts will consider and construe the instruments together. The theory is that the instruments are effectively one instrument or contract."). Plaintiff attempts to hold Driftwood liable for alleged breach of certain contractual terms while simultaneously denying the enforceability of other terms. Even if the Arbitration Agreement and Admissions Agreement constitute two separate contracts, plaintiff still takes inconsistent positions regarding these contracts, which were executed by the same parties under the same purported authority. It would be inequitable, for example, to allow plaintiff to assert that Elijah McCutcheon had authority to sign the Admissions Agreement on behalf of Carmela McCutcheon, but lacked such authority to sign the Arbitration Agreement. For these reasons, the court finds that plaintiff is estopped from denying the enforceability of the Arbitration Agreement.

### 2. Third Party Beneficiary

Alternatively, Driftwood argues Carmela McCutcheon is an intended third party beneficiary and is therefore bound by the Arbitration Agreement. "A third party beneficiary is a party that the contracting parties intend to directly benefit." Helms Realty, Inc. v. Gibson-Wall Co., 611 S.E.2d 485, 488 (S.C. 2005). "[I]f a contract is made for the benefit of a third person, that person may enforce the contract if the

contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." Bob Hammond Const. Co. v. Banks Const. Co., 440 S.E.2d 890, 891 (S.C. Ct. App. 1994). Moreover, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Int'l Paper Co., 206 F.3d at 416-17 (emphasis added).

Carmela McCutcheon's care was the essential purpose of the agreement, as she is named in both the Arbitration Agreement and the Admissions Agreement as the resident to be admitted into the facility. Further, the terms of both agreements refer to the rights and obligations of Carmela McCutcheon as resident of the facility, and Driftwood as the caregiver. As such, Carmela McCutcheon was an intended beneficiary to the contract, and the court finds that the arbitration provision was binding on her and remains binding on her estate. See THI of S.C. at Columbia, LLC v. Wiggins, No 11-888, 2011 WL 4089435, at *6 (D.S.C. Sept. 13, 2011) ("Hall's care was the essential purpose of the Contract. Thus, Hall was an intended third-party beneficiary of the Contract which was signed by Wiggins in her capacity as an immediate family member. It follows that Hall was bound by the Arbitration Provision immediately prior to his death and, consequently, that it remains binding on his estate."); Cook v. GGNSC Ripley, LLC, 786 F. Supp. 2d 1166, 1172 (N.D. Miss. 2011) (holding arbitration agreement in contract for nursing home care bound third-party beneficiary and her estate).

### 3. Unconscionability

Plaintiff argues the arbitration contract is unconscionable and should not be enforced. "Unconscionability has been recognized as the absence of meaningful choice

6

on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc., 472 S.E.2d 242, 245 (S.C. 1996).

> In determining whether a contract was "tainted by an absence of meaningful choice," courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause.

Simpson v. MSA of Myrtle Beach, Inc., 644 S.E.2d 663, 669 (S.C. 2007) (citation omitted).

Plaintiff argues the Arbitration Agreement is unconscionable because: it is not "geared towards achieving an unbiased decision by a neutral decision-maker"; Elijah McCutcheon was disadvantaged in terms of bargaining power and sophistication; and the clause stating that the agreement is governed by interstate commerce is inconspicuous and constitutes an element of surprise. Pl.'s Resp. 10-11. First, the law does not require that an arbitration agreement specifically state that the arbitrator will be neutral. Even though the Arbitration Agreement does not contain the terms "neutral" or "unbiased," it provides that, in the event the parties fail to agree on an arbitrator, the court will select one. See Def.'s Mot. Ex. A. In addition, the Arbitration Agreement here does not create any unfair process for selection of arbitrators, such as requiring that the arbitrators be chosen from a list created by Driftwood alone. Cf. Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938-39 (4th Cir. 1999). Next, any lack of sophistication on the part of Elijah McCutcheon does not overcome the fairness of the terms in the agreement itself. See

Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 n.5 (S.C. 2001) ("[I]nequality of bargaining power alone will not invalidate an arbitration agreement."). Finally, the clause stating that the agreement is governed by interstate commerce was set in normal text, rather than obscured in smaller text or in a footnote. See Def.'s Mot. Ex. A. "[A] person who can read is bound to read an agreement before signing it," Munoz, 542 S.E.2d at 365, and the law generally presumes that a party to a contract has read and understood the contract's terms. Simpson, 644 S.E.2d at 670. The clause relating to interstate commerce did not constitute an unfair surprise. For these reasons, the court finds that the Arbitration Agreement was not unconscionable.[1]

### B. Applicability of Federal Arbitration Act

Plaintiff argues that even if the Arbitration Agreement is enforceable, the FAA does not apply because the transaction between McCutcheon and Driftwood does not "in fact" involve interstate or foreign commerce. For an arbitration agreement to be subject to the FAA, it must involve interstate commerce. 9 U.S.C. § 2. "The FAA has an expansive reach, similar to that of the Commerce Clause, such that an arbitration clause merely 'affecting' interstate commerce would be covered by the statute." Wiggins, No. 11-888, 2011 WL 4089435, at *1 n.3 (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74 (1995)). "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject

---

[1] Plaintiff also argues that an enforceable arbitration agreement does not exist because Elijah McCutcheon had neither apparent agency authority nor statutory authority to bind Carmela McCutcheon under the contract. Because the court holds that plaintiff is equitably estopped from denying the validity of the Arbitration Agreement, and that Carmela McCutcheon was a third party beneficiary and the Arbitration Agreement remains binding on her estate, the court need not reach plaintiff's additional arguments.

8

to federal control." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (internal quotation marks omitted).

The Arbitration Agreement here clearly states that "the services and reimbursement thereof effects a transaction that involves interstate commerce." Def.'s Mot. Ex. A. Courts look to the terms of the arbitration agreement itself as evidence of whether the transaction involves interstate commerce. Wood, 429 F.3d at 87 (emphasis added) (noting that courts must consider "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"). Even without this stipulation in the Arbitration Agreement, the FAA still applies because the type of nursing home care involved here affects interstate commerce. Driftwood's Administrator, Jim Thomas, submitted an affidavit wherein he attested that food is supplied to Driftwood, located in South Carolina, by Sysco Corporation, which is headquartered in Texas. Def.'s Mot. Ex. E, ¶ 6. Thomas further stated that supplies used at Driftwood are purchased from manufacturers in California, Colorado, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, and Wisconsin. Id. at ¶¶ 7-13. These supplies must be shipped across state lines to reach Driftwood's facility. Finally, Driftwood participates in the federal Medicare and Medicaid programs. Id. at ¶ 14. The court finds this evidence sufficient to fulfill the interstate commerce requirement.

Plaintiff cites to Timms v. Greene, 427 S.E.2d 642 (S.C. 1993), as support for his argument that the transaction at issue does not involve interstate commerce. In Timms, the South Carolina Supreme Court found that an affidavit from the administrator of a health care center, in which the administrator averred that the center engaged in interstate commerce, was "insufficient to form the basis of the contract between the parties." Id. at

9

644.  Timms is distinguishable from the present case, because the Arbitration Agreement signed by plaintiff specifically stated that the underlying transaction involves interstate commerce.  Thus, the Arbitration Agreement "on its face evidences commerce."  Id.  The court finds that the FAA applies in this case.

### III.  CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion to compel arbitration.

The court dismisses this matter, but retains jurisdiction to select an arbitrator in the event that the parties cannot reach a mutual decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**December 15, 2011
Charleston, South Carolina**